BLANCHE PAIGE, an Infant, by MARY VENTON, Her Guardian ad Litem, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

(Claim No. 23310.)

(Argued November 27, 1935; decided January 7, 1936.)

*John J. Bennett, Jr., Attorney-General (Henry Epstein and Leon M. Layden* of counsel), for appellant. The State is not liable for the injuries occasioned to the claimant. (*Glennie* v. *Falls Equipment Co.*, 238 App. Div. 7; *Smith* v. *B. & A. R. R. Co.*, 181 N. Y. 132; *Locke* v. *State*, 140 N. Y. 480; *Matter of Mandatto* v. *Hudson Shoring Co.*, 190 App. Div. 71; 229 N. Y. 624; *Blake* v. *Ferris*, 5 N. Y. 48; *Town of Pierrepont* v. *Loveless*, 72 N. Y. 211; *St. Agnes Training School for Girls* v. *County of Erie*, 68 Misc. Rep. 648.) There was no negligence proven. (*Sandler* v. *Garrison*, 249 N. Y. 236.)

*Rollin B. Sanford* and *Sidney L. Grossman* for respondent. The State is liable for the negligence of its officers and employees while acting as such. (*Jackson* v. *State*, 261 N. Y. 134.) The State was negligent. (*Scalia* v. *State*, 147 Misc. Rep. 622; *Collins* v. *Waterbury Co.*, 144 App. Div. 670.)

LOUGHRAN, J. The question to be determined is whether the now unquestioned facts make out a liability of the State in tort under section 12-a of the Court of Claims Act. By that section it is provided: " The state hereby waives its immunity from liability for the torts of its officers and employees and consents to have its liability for such torts determined in accordance with the same rules of law as apply to an action in the supreme court against an individual or a corporation, and the state hereby assumes liability for such acts, and jurisdiction is hereby conferred upon the court of claims to hear and determine all claims against the state to recover damages for injuries to property or for personal injury caused by the misfeasance or negligence of the officers or employees of the state while acting as such officer or employee."

The case for the claimant was that she was committed by a police court to a privately owned reformatory pursuant to a statute (Laws of 1902, ch. 603) whereby that

institution was " authorized to receive and hold " her for a term within her minority; that without adequate instruction she was there made to operate a complex and dangerous machine for ironing fabrics; that while so engaged, without fault on her part, she was maimed by defective action of the apparatus; and that she would not have been seriously hurt had she (or any one else who was present) known how to use a device designed to safeguard the operator in such an emergency. The Court of Claims ruled that the negligence of those in charge of the institution was a tort of officers and employees of the State acting as such, and that, in accordance with the foregoing provision of the Court of Claims Act, the claimant should recover for her injuries.

That decision was adopted by the Appellate Division, except for a modification increasing the damages awarded. In the opinion of that court reference is made to provisions of the State Charities Law (Cons. Laws, ch. 55) respecting the right of the State to visit, inspect and supervise the reformatory which had custody of the claimant, and to evidence that the institution had not been visited by any representative of the State for more than a year before the accident. Upon this phase of the case the Appellate Division offered this commentary: " It may not be said that the State can escape liability under the statutes referred to, when inexperienced and irresponsible girls, under its authority, may be placed in restraint for safe keeping in institutions under the control and supervision of the State, when there is a substantial disregard of the duty of inspection and supervision which the statute requires, and personal injury results from such non-feasance." (245 App. Div. 126, 129.) In any case the judgment cannot be affirmed on that basis, because the findings are not sufficient to support such a conclusion as matter of fact. We agree, however, to the result reached below on the findings as made and affirmed, and so we need add little more than some suggestion of the reason why we would perhaps be reluctant to accept the con-

ception of the case expressed in the opinion of the Appellate Division.

Visitation, inspection and supervision of institutions of the class that includes the reformatory to which the claimant was committed is commanded by the Constitution of the State (Art. VIII, § 11). The command is addressed to the State Board of Social Welfare, whose composition and jurisdiction are defined by article 2 of the State Charities Law. This court has definitely analyzed the real character and meaning of these requirements of superintendence of institutions of a charitable, correctional or reformatory character. In *People ex rel. State Board of Charities* v. *New York Society for Prevention of Cruelty to Children* (161 N. Y. 233, 244) we said: " The powers of the board over charitable institutions originated in the abuses supposed to exist in the appropriation and expenditure of public money for charitable purposes. Therein is to be found the reason of the law." On reargument of that case, the same limitation was restated in these words: " The purpose was to safeguard the expenditure of public money for the support and maintenance of indigent persons in public or private institutions; and hence the language employed should be made subservient to that purpose " (162 N. Y. 429, 435). In the light of that case, the Constitution does not appear to us distinctly to declare a duty of visitation and care owed to the inmates of the institution in question. Argument may be not less strong that the duty was imposed in the interest of the State alone and, in that view, the Constitution did not establish any correlative legal right of the claimant as an individual. (See *Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 341; Green on Rationale of Proximate Cause, ch. 1.) When the question is raised we can consider whether State liability may result from the duty of State oversight of such institutions. It suffices now, as we have indicated, that the judgment for the claimant does not rest on any remissness of the State Board of Social Welfare.

The quasi-penal institution in which the claimant was confined was a governmental agency to which the State had committed in part its function to care for wayward minors. (Laws of 1902, ch. 603; *Corbett* v. *St. Vincent's Industrial School,* 177 N. Y. 16.) But the institution did not thereby acquire a status equivalent to that of the civil divisions of the State. (See *Murtha* v. *New York Homeopathic Medical College & Flower Hospital,* 228 N. Y. 183.) There is no misuse of language in saying that the State employed the institution. (Cf. *People ex rel. State Board of Charities* v. *New York Society for Prevention of Cruelty to Children,* 162 N. Y. 429, 434.) If the word " agent " were found in section 12-a of the Court of Claims Act would it be held that this case was outside the State's assumption of liability? The terms " agent " and " employee " have been used interchangeably in the cases that dealt with State immunity from liability for tort. (*Litchfield* v. *Bond,* 186 N. Y. 66, 82, 83; *Murtha Case, supra,* p. 185.) In *Jackson* v. *State* (261 N. Y. 134, 138) it was said: " Section 12-a constitutes a recognition and acknowledgment of a moral duty demanded by the principles of equity and justice." In that spirit, we accept the construction of the section here adopted by the courts below.

Recently in this court the servant of a temporary agent of the State was characterized as a State employee. (*Maltby* v. *County of Westchester,* 267 N. Y. 375.) In our opinion, that case is not by consistent reasoning to be soundly distinguished from this. All the essential difference is that here the public moneys received by the State's agent did not come out of the State treasury. To exalt that circumstance to a ground of distinction in itself would be unnecessarily to blunt the beneficient purpose of the waiver by the State of its immunity. No rule of construction compels that course. (*Sipple* v. *State,* 99 N. Y. 284, 289.)

The judgment should be affirmed, with costs.

LEHMAN, J. (dissenting). The claimant, against her will, was committed by a Police Court to a privately owned reformatory. There, without fault on her part, she sustained serious and permanent injury through negligence on the part of agents and employees of the reformatory. The custody of persons convicted of crime " is one of the functions of government which the state may exercise and which it may delegate to charitable institutions created under its laws." In the exercise of that delegated function the reformatory is " entitled to the same immunity from liability for damages * * * that is conceded to the state itself and to all its municipal divisions." (*Corbett* v. *St. Vincent's Industrial School,* 177 N. Y. 16, 21.) Immunity from liability for injuries wrongfully inflicted upon an individual creates injustice. The moral obligation to compensate for such injuries may be clear, yet even in such cases the Legislature alone has power to waive the immunity. The courts have no power to destroy it.

By section 12-a of the Court of Claims Act the State has waived its " immunity from liability for the torts of its *officers and employees.*" Now, it is said that the negligence of the private reformatory and its employees is the negligence of " officers " or " employees " of the State, and that the State may be charged with responsibility for the wrong suffered by the claimant at their hands. Such construction of the statute goes, I think, far beyond the plain meaning of its language. No case is cited where heretofore such responsibility has ever been asserted against the State.

The functions of government which the State may exercise directly or which it may delegate to corporations or quasi corporations, cover a broad field. The State commonly does delegate many of these functions to local governmental agencies. It is too well established to be disputed now that, in the promotion of public health and care of the sick, in public education, in police and fire

protection, in the maintenance of jails, courthouses and police stations, hospitals, schools, fire departments, and in other activities which serve the welfare of the people of the State, municipal corporations exercise governmental functions and, except as otherwise provided by law, are immune from suit. (See McQuillin on The Law of Municipal Corporations, vol. 6, §§ 2792–2798.) Perhaps such immunity should be withdrawn from them by the State, but it can hardly be supposed that in enacting section 12-a of the Court of Claims Act the State intended to assume liability for the negligent acts of governmental agencies which are themselves immune.

There is nothing in the language of the statute which can support a construction so extraordinary. It does not purport to create a new liability or a new wrong where none existed before. It merely waives the State's immunity from liability for the torts of its " officers and employees." These terms have well-established meanings. Certainly corporations, whether municipal or private, which exercise delegated governmental functions are neither officers nor employees of the State. That does not mean that an agent of the State *cannot* be its officer or employee. It does mean that a corporation *does not become* an officer or employee *merely* because the State has delegated to it some governmental functions.

Nothing said or decided in *Maltby* v. *County of Westchester* (267 N. Y. 375, 379) touches the question here presented. There the State did not delegate to the county of Westchester or to its Park Commission the function of road construction, but merely used the county as its own agent, as it might use an individual, for the building and construction of a road out of the moneys of the State. As Chief Judge Crane pointed out in his opinion, the work " was being *performed and paid for* by the State through the Westchester County Park Commission as its agent." Even so, we held only that the county of Westchester was not liable. We did not pass upon the liability of the

State. A special statute of the State expressly governed liability there.

That case illustrates the distinction between work performed by the State through an agent and work performed by a corporation in the exercise of a governmental function delegated by the State. Persons employed by an agent in performing the work of the principal are employees of the principal, not the employees of the agent. When the State delegates governmental functions to a corporation, municipal or private, the law has always recognized that the corporation in performing those functions acts as principal. Its contracts are binding upon it in its corporate capacity and it performs its work through its own employees. It has never been questioned that teachers, policemen, firemen, nurses and hospital attendants employed by a corporation in the performance of governmental functions are the employees of the corporation, not of the State. We held nothing to the contrary in *Maltby* v. *County of Westchester* (*supra*); but a decision that the corporation, while exercising a governmental function, acts as agent of the State, and that the State, except for its governmental immunity, is responsible for the torts of the corporation employed by it, may carry such consequences.

CRANE, Ch. J., O'BRIEN and HUBBS, JJ., concur with LOUGHRAN, J.; LEHMAN, J., dissents in opinion in which FINCH, J., concurs; CROUCH, J., not sitting.

Judgment affirmed.