Harold Bloom, an Infant, by Louis Bloom, His Guardian ad Litem, and Louis Bloom, Respondents, *v.* Jewish Board of Guardians, Appellant.

First Department, January 10, 1941.

*William E. Lyons* of counsel [*Ireland & Cohen,* attorneys], for the appellant.

*Gustave G. Rosenberg* of counsel [*Morris Horowitz* with him on the brief], for the respondents.

CALLAHAN, J. In November, 1936, the infant plaintiff, Harold Bloom, then fourteen years of age, was committed to the custody of defendant, a corporation maintaining an institution known as the " Hawthorne Cedar Knolls School," at Hawthorne, N. Y. This commitment was made by a justice of the Children's Court of the City of New York, in which court Bloom had been adjudged a juvenile delinquent. On March 6, 1938, Bloom, who was still in defendant's custody, suffered personal injuries to his hand through the breaking of the glass of a window which he was attempting to open. He has recovered a judgment against the defendant herein upon the finding of a jury that the injuries sustained as aforesaid were caused by defendant's negligence.

The negligence claimed by the plaintiffs was that the window at which the accident happened was out of repair; that it had been fastened by nailing it up; that this condition was known to defendant, and that defendant's employees were negligent in directing the infant plaintiff to use force to open the window, which they should have known could not be manually opened. The window was one with four panes of glass, set in a wooden frame or sash. Ordinarily it would open by pushing the bottom outward, the window pivoting from the center thereof.

The evidence discloses that the defendant's supervisor, who was in charge of a group of boys which included infant plaintiff, directed plaintiff to " use some elbow grease," when plaintiff complained of his inability to move the window. Plaintiff testified that on receiving such directions he pushed on the window a little harder, and that his hand slipped and went through a pane of glass.

While the claims of the infant plaintiff and his witnesses concerning the alleged directions and notice of the defective condition were sharply disputed, we consider that the issues thus raised were for the jury.

Appellant contends, however, that the case should not have been submitted to the jury for two reasons: *First,* that the act of the defendant's supervisor in giving the alleged directions to the infant plaintiff was not the proximate cause of the injuries sustained by him; and, *second,* that defendant, by reason of the nature of the work it was carrying on in caring for committed wards of the State, was immune from liability for the negligence of its servants.

We think that the question of causal relation was for the jury. While the infant plaintiff broke the glass because in using force to open the window he permitted his hand to slip from the sash, it must be remembered that said plaintiff was an inmate of a quasi-penal institution, and was under compulsion to obey orders. It is true that the nailed condition of the window was to some extent a passive factor in the occurrence, and that the accident might not have happened if force had been applied to the sash alone in such a manner that the infant plaintiff's hand would not slip, but, under all the circumstances, we cannot say, as a matter of law, that the giving of the directions to apply greater force, if carelessly given, was not an efficient, producing cause of the accident, and thus a proximate cause.

As to the second ground urged for dismissal of the complaint, a more difficult problem is presented. The question of the liability of a private institution, to which the State has delegated governmental functions, for the negligent acts of its servants while exercising such functions has been rendered somewhat uncertain because of recent developments in the law of this State.

Defendant was incorporated by a special act of the Legislature (Laws of 1921, chap. 330), to maintain and operate institutions for the care of such delinquents as might be committed to it by any court of criminal jurisdiction. The school in which the infant plaintiff was injured was operated for that purpose, and said plaintiff was one who was in defendant's care as the result of a court commitment. The work which plaintiff was doing at the time he met with his injuries was a step in connection with his custody as a ward of the State. In caring for plaintiff, defendant was, therefore, exercising one of the functions of government which the State had delegated to it.

In the case of *Corbett* v. *St. Vincent's Industrial School* (177 N. Y. 16) it was held that an institution of the nature of the defendant was entitled to the same immunity from liability for damages for the negligent acts of its servants as is possessed by the State itself. We find no material difference between the facts involved in the *Corbett* case (*supra*) and those presented in the case we are now called upon to decide. It is necessary, therefore, for us to determine whether the rule of immunity enunciated in the *Corbett* case (*supra*) has since been altered by the courts or by statute or because of any change in the public policy of the State. Before attempting to determine the question as to whether such immunity still exists, it would be well for us to consider the legal principles involved in that doctrine. The theory of immunity from liability for the negligent acts of its servants of a corporation

exercising governmental powers delegated by the State is that the doctrine of *respondeat superior* is not to be applied between such a corporation and its officers and employees. When carrying on governmental functions these officers and employees are said to be agents, not of the corporation, but of the " greater public," the State. Based on this theory the rule of law is applied in favor of such corporation that is applied in favor of the State itself, which is that the State is not liable for the misfeasance of its own officers in the absence of an express assumption of liability. (2 Shearman & Redfield, " The Law of Negligence," [6th ed.], § 253.) The rule as to immunity from liability of the State for injury to a prisoner in a penal institution is sometimes said to rest on the principle that if such a person is injured in the course of his incarceration his injury must be attributed to the cause which placed him in confinement. (*Lewis* v. *State*, 96 N. Y. 71.)

The reasons given for applying immunity in favor of an institution exercising governmental functions are not always the same as those given in support of the immunity of an institution carrying on other private charities. A claim of immunity on behalf of an institution conducting a hospital or similar charity is based upon the hypothesis that a beneficiary of the charity impliedly waives the right to damages for negligence in the administration of the charity, or that payment to an injured person would be a diversion of the charitable trust. (See *Sheehan* v. *North Country Community Hospital*, 273 N. Y. 163.) As to a stranger to such charity, it is now settled that the charitable corporation is not exempt. (*Hordern* v. *Salvation Army*, 199 N. Y. 233; *Murtha* v. *New York Homeopathic Medical College and Flower Hospital*, 228 id. 183.) It is equally well settled that there is no rule of immunity which relieves a charitable hospital from liability for its negligence in the performance of any acts other than those concerned with medical treatment by doctors and nurses. (See *Volk* v. *City of New York*, 284 N. Y. 279; *Dillon* v. *Rockaway Beach Hospital*, Id. 176.)

It is not entirely clear from the decided cases whether as to governmental agencies, such as quasi-penal institutions, a like distinction is to be made between their liabilities to inmates and to strangers, or with regard to their liability for administrative as distinguished from governmental acts. Even if we assume that a distinction of the latter kind exists as to a quasi-penal institution, the distinction would be immaterial in the present case, for there is no proof here that the acts complained of were of a corporate or administrative nature.

On the other hand, if a distinction is to be made between the liability of a quasi-penal institution such as defendant to inmates

and its liability to strangers, defendant would be immune from liability to plaintiff, an inmate, if the rule of immunity that was indicated in the *Corbett* case (*supra*) still prevails. Some doubt is cast on whether that rule is still adhered to, *first*, by reason of the statutory changes which have been adopted since that decision was announced, and, *second*, because of later decisions of our Court of Appeals on the same subject.

Since the decision in the *Corbett* case (*supra*), the State of New York has, by statute, waived its immunity from liability for the torts of its officers and employees. It has expressly assumed liability for the negligent acts of such agents, permitting persons who suffer injury to person or property thereby to present their claims for damages to the Court of Claims. (See former Court of Claims Act, § 12-a, added by Laws of 1929, chap. 467.) This assumption of liability, however, in so far as it is expressed by the statute, applies only to the liability of the State itself. Nothing is found in section 12-a ■ which indicates an intention to waive any immunity such as formerly was afforded to a corporation carrying on delegated governmental functions. There is nothing in the act concerning the right to sue such corporation in any court of this State.

In addition to this waiver by the State there has been waiver, by legislative action, of some of the immunity formerly possessed by municipal corporations in respect to certain governmental activities of members of the police and fire departments. (See General Municipal Law, art. 4.)

Frequently statutes creating public bodies to which are committed governmental functions authorize such bodies to sue and be sued. An example of this is found in the statutes relating to boards of education. (See Education Law, § 310.) Accordingly, it has been held that a board of education created under a statute of this nature is liable for the negligent acts of its servants. (See *Herman* v. *Board of Education*, 234 N. Y. 196.) But that liability appears to rest on express waiver and we have no such express statutory waiver of immunity as to defendant.

The question is suggested as to whether even without such express waiver the adoption by the State of these numerous statutes, all of which indicate a tendency to waive immunity, evidences the adoption of a general public policy that would remove the immunity afforded to private corporations exercising delegated governmental powers by contract with the State. Public policy ordinarily is to be ascertained from the declarations of the Legislature on the subject, but public policy is not always expressly declared as such in specific statutes. It is sometimes found by the courts to exist from

the fact that the Legislature has spoken frequently and consistently on the subject, and thus adopted a fixed position with reference thereto. (*Campbell* v. *City of New York*, 244 N. Y. 317, 324.)

By the great weight of authority, however, the rule appears to be that a State has no public policy except that which is found in its Constitution and laws. The law written in a Constitution or in statutes is fixed, and the courts may not disregard these writings. Therefore, our inquiry should be confined to whether any waiver of immunity is to be found in the Constitution, the statutes, or judicial records. (*Mertz* v. *Mertz*, 271 N. Y. 466; *People* v. *Hawkins*, 157 id. 1, at p. 12.) " It is better to adhere to the plain language of the law than to resort to the unsafe ground of inference, or of public policy." (*Matter of Lampson*, 161 N. Y. 511, 519.) Whichever of these tests is used, we find no change in the law for there has been neither the adoption of a fixed position eliminating all immunity of governmental agencies, nor do we find any express statement in the statutory law as written which would indicate an intention to repeal such immunity as to a corporation doing defendant's kind of work.

The only question remaining is whether the common-law rule enunciated in the *Corbett* case (*supra*) still prevails.

In *Murtha* v. *New York Homeopathic Medical College and Flower Hospital* (*supra*) the question was presented as to whether a hospital corporation which contracted with a municipal governmental agency to conduct ambulance service was liable for the negligence of its servant — the driver of an ambulance — who injured a person not a patient in the hospital. In upholding the liability of such corporation, CARDOZO, J., speaking for the Court of Appeals, said: " We did not hold to the contrary in *Corbett* v. *St. Vincent's Industrial School of Utica* (177 N. Y. 16). That case is to be limited to its special facts. Much that was said in the opinion about the immunity of the agencies of the State was unnecessary to the decision. An inmate of a reformatory, confined there under a sentence of a court, sued the reformatory, which was a charitable institution, for negligence in failing to instruct him adequately in the use of dangerous machinery. The action was based on the assumption that the relation between reformatory and inmate was that of master and servant, or something similar thereto. We held that the two relations were diverse, and that diverse also were the attendant duties. What duty the institution owed to strangers as opposed to inmates, there was no occasion to consider."

In the same decision it had been previously pointed out that the State was not liable for the torts of its agents and contractors unless such liability had been assumed, and that the same exemption was

extended to the civil divisions of the State, when engaged as the delegates of the State in the discharge of governmental functions. But the decision also pointed out that agents and contractors, though unable to impose liability on the State or its divisions, remained liable themselves to injured persons, and this whether they acted in person or by subagents or servants.

It will thus be seen that in the *Murtha* case (*supra*) there was no express repudiation of the rule of immunity applied in the *Corbett* case (*supra*), under the state of facts presented in the earlier case, although the Court of Appeals did create some doubt as to whether it intended to adhere to all that it had said in its opinion in the *Corbett* case concerning immunity of governmental agencies which became such as agents of or contractors with the State. The *Murtha* case (*supra*), however, involved the question of liability of a charitable institution, a hospital, for injuries sustained by a stranger. The case did not involve a claim by one who was injured while an inmate in an institution as a governmental agency. What was said in that case with respect to the liability of contractors working for the State would not necessarily be applicable to an institution such as defendant which was doing the work of the State itself as a delegate of the State rather than working as a mere contractor for the State in the performance of some public work.

After the adoption of section 12-a of the Court of Claims Act, the question of immunity was again presented in the case of *Paige* v. *State of New York* (269 N. Y. 352). That decision involved an appeal from a judgment of the Appellate Division affirming, as modified, a judgment of the Court of Claims in favor of a person who was injured while an inmate of a privately conducted reformatory to which she had been committed. The question presented was whether under section 12-a of the Court of Claims Act the State had intended to assume liability for negligence of employees of a reformatory exercising the governmental function of caring for a committed inmate. It was held that the State had intended by section 12-a to assume such liability. The decision turned on the question as to whether such a reformatory was an "employee" of the State, within the meaning to be given to that word as used in the statute. It is, therefore, to be seen that the *Paige* case (*supra*) is authority for the proposition that a person injured, as infant plaintiff was, while in a quasi-penal institution may present to the Court of Claims a claim for damages against the State for the negligent conduct of the employees of the institution. It might seem somewhat inconsistent for the Legislature to permit a person situated as infant plaintiff is to sue the State itself, but not to sue the corporation which was the direct master of the negligent

servant. However, as a matter of statutory construction it is plain that this is what section 12-a provides.

It is interesting to note that in the *Paige* case (*supra*) both the prevailing and the dissenting opinions referred to the *Corbett* case (*supra*). In the prevailing opinion it was stated that a quasi-penal institution, to which a person was committed who suffered an injury, while a governmental agency to which the State had delegated, in part, its functions does not, by receiving such a committed person, acquire a status equivalent to that of a civil division of the State. The opinion does not indicate that no immunity exists as to a corporate agency to which has been delegated governmental activities. Nor would such a holding seem to have been intended, for no question as to the liability of such institutions was involved in the case. The question there presented was merely as to the liability of the State itself. That there was no intention in the *Paige* case (*supra*) to reject *in toto* the rule of immunity of governmental agencies is indicated further by a statement in the dissenting opinion, where it is pointed out that such governmental agencies are still immune.

Under the circumstances, we deem that it is still the law of this State that an agency such as defendant, performing the work of the State, is immune from suit for the negligent acts of its servants in performing governmental functions.

In view of this determination, the judgment so far as appealed from must be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., concurs; DORE, J., concurs in result; GLENNON, J., dissents and votes to affirm.

Judgment, so far as appealed from, reversed, with costs, and the complaint dismissed, with costs.