E. N. BOCANEGRA LOPEZ, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 25621.)

Court of Claims, March 21, 1941.

*Paul Friedman,* for the claimant.

*John J. Bennett, Jr., Attorney-General [Martin P. O'Leary, Assistant Attorney-General,* of counsel], for the defendant.

BARRETT, P. J.  On February 23, 1937, Damaso Ferrer was released from jail in New York city under bail of $500, the bond for which was furnished by the Continental Casualty Company. To induce the company to furnish the bond, claimant agreed, in the event that the bail was forfeited, to indemnify the company in the sum of $500 and gave the company further security by a confession of judgment.  On March 4, 1937, Ferrer was indicted for the crime of bigamy and on March 8, 1937, in the Court of General Sessions of the County of New York, he pled not guilty and his bail was continued.  On October 30, 1937, he was transferred from Ellis Hospital in Schenectady to the Schenectady County Home, maintained by the department of public welfare of the county of Schenectady.  He was a citizen of the United States and a resident of Puerto Rico.  He had not established, prior to October 30, 1937, a settlement within any public welfare district of the State and, consequently, the State was responsible for any relief furnished him by the county of Schenectady.  In fact, he was approved as a State charge on November 26, 1937. While at the county home he was free to come and go as he pleased, and at the suggestion of the commissioner of public welfare of Schenectady county he consented to return to Puerto Rico, and the State, through its Department of Social Welfare, agreed to pay the transportation cost thereof and advised the commissioner of public welfare that Ferrer would sail on December 2, 1937, from New York city.  The case against Ferrer came on for trial on March 11, 1937, and was adjourned.  On October 23, 1937, Ferrer advised his attorney that he was in the Ellis Hospital in Schenectady and the attorney was notified that the case would come on for trial on November 22, 1937.  The attorney, on November 19, 1937, wrote the hospital asking that Ferrer be advised that his case had been set down for trial on November 22, 1937, and a similar letter was written to Ferrer at the hospital.  On November 22, 1937, the attorney received from the hospital his unopened letter and was advised that Ferrer had been transferred to the Schenectady County Home.  The case was again adjourned to November 30, 1937, and the attorney so advised Ferrer, also writing him that he should be present in court at that time.  The case, however, was again adjourned to December 7, 1937.  In the meantime, and on November 30, 1937, the attorney received a telegram from Ferrer advising him that he was returning to Puerto Rico.  On December 1, 1937, the attorney wrote the commissioner of public welfare of Schenectady county, advising him that Ferrer was required to appear on December 7, 1937; that if he failed to appear his bail would be revoked and requested information regard-

ing his whereabouts. This letter was received by the department of public welfare on December 2, 1937. On that day Ferrer, accompanied by the commissioner of public welfare, left Schenectady for New York city on a train leaving at ten-twenty-three A. M. and due to arrive at one-fifty-five. On arrival in New York city, Ferrer was met by an agent of the Department of Social Welfare of the State who accompanied him to the steamship line and there he boarded a ship bound for Puerto Rico, departing at three-ten P. M. In reply to the letter of December 1, 1937, the deputy commissioner of public welfare of Schenectady wrote the attorney advising him that the commissioner of public welfare had not before that time been informed that Ferrer was under a criminal charge and also informing the attorney that arrangements had been made for Ferrer's return to Puerto Rico and that he would arrive in New York city on December 2, 1937. This letter was postmarked December 2, 1937, twelve-thirty P. M., and received by the attorney on December 3, 1937. On January 14, 1938, the Court of General Sessions ordered the bail of Ferrer forfeited for his failure to appear for trial and judgment was then entered against the surety and the amount paid to the city of New York. On January 21, 1938, the surety entered judgment against the claimant and claimant paid the surety the sum of $500. This claim is to recover from the State the sum of $500, it being claimed that the State, its officers and agents were negligent in forcibly deporting and removing Ferrer from the jurisdiction of the Court of General Sessions, with knowledge of the indictment and pending the trial. The notice of intention to file a claim was filed on July 14, 1939, and the claim was filed on January 12, 1940. Claimant contends that the claim did not accrue until January 14, 1939, when the one-year period expired within which an application might be made for the remission of the forfeiture pursuant to section 598 of the Code of Criminal Procedure. I am not in accord with this contention. Claimant's rights are the same as those of the surety and the claim, if any, accrued on January 14, 1938, when the Court of General Sessions made its order forfeiting the bail. In that connection it may be said that no application was made for the remission of the forfeiture. The claim being founded in negligence, was required to be filed within ninety days from the time it accrued unless a notice of intention was filed in the meantime. (Ct. Claims Act, § 10, subd. 3.) Claimant also contends that even if the notice of intention and claim were not duly filed, the claim having been filed within two years after its accrual, the court can permit its filing pursuant to subdivision 5 of section 10 of the Court of Claims Act, upon the ground that

claimant proved facts sufficient to excuse the delay. In support thereof, the case of *Schroeder* v. *State of New York* (252 App. Div. 16; affd., 276 N. Y. 627) is cited. There it was held that the failure to use affidavits on a motion for permission to file a claim was waived by the State where objection was not made. Here, however, the State objected and, therefore, there is no waiver. Further, such a motion must be made within two years after the accrual of the claim and here it must be held that the motion, if there was a motion, was not made until the trial on May 29, 1940, or more than two years after the claim accrued. For these reasons the claim was not duly filed and must be dismissed. However, I am satisfied also that the claim must be dismissed upon the merits. The State did not know and it was not advised of the indictment until after Ferrer's departure from this country. He was not forcibly deported or removed by the State. It was merely made possible for him to return to his home in Puerto Rico by the State's paying the transportation cost. I cannot see how the State was at fault or in any way responsible for claimant's damages. The bail was forfeited to the city of New York and the State did not benefit. (*People* v. *County of Tioga*, 232 App. Div. 367.) Ferrer did not have a settlement in any public welfare district in the State. For the relief furnished him by the county the State was responsible. (Social Welfare Law, § 62, subd. 1, ¶ a; derived from Pub. Welfare Law, § 18, subd. 1, ¶ a.) Under section 71 of the Public Welfare Law (now section 127 of the Social Welfare Law) the State was required to pay the cost of Ferrer's removal to Puerto Rico. The arrangements for such removal, except the selection of a ship on which to sail, were made by the county. The county department was not thereby made an agency of the State. (*Hughes* v. *State of New York*, 252 App. Div. 263; *Brokaw* v. *State of New York*, 161 Misc. 901; *Chastaine* v. *State of New York*, 160 id. 828.) *Paige* v. *State of New York* (269 N. Y. 352) is distinguishable in that the claimant therein was a prisoner while Ferrer could come and go as he pleased and voluntarily left this country.

The claim must be dismissed in accordance with the decision submitted herewith.