Gustave G. Rosenberg, J.
The claim herein for damages for personal injuries is based on the alleged negligence of the State by reason of an assault committed by an off-duty State Supreme Court attendant upon the claimant herein on January 26, 1964 at or near the corner of First Avenue and 84th Street in the Borough of Manhattan, City of New York.
Notice of intention was duly filed on April 24, 1964 in the office of the clerk of the Court of Claims and filed with the Attorney-General on April 27, 1964. The claim was filed with the clerk of the Court of Claims on January 14, 1966, and upon the Attorney-General of the State of New York.
The claim has not been assigned or submitted to any other court or tribunal for determination.
The trial was held in courtroom “ D ” of the State Office Building, 270 Broadway, in the City of New York, on the 3rd, 6th, 7th and 10th days of November, 1969.
On January 26, 1964 at around midnight, the claimant, Conrad Jacobson was walking south on the east sidewalk of First Avenue near 84th Street in the company of a lady friend, his ex-sister-in-law. At about this time an altercation arose between these two and one, Cornelius J. Scanlon, a court attendant employed by the Supreme Court, First Judicial Department, and his wife. The versions that led to the argument between the two couples are somewhat unclear and might even be considered humorous, but for the serious consequence. It is certain *115 that the heated discussion led to Scanlon striking the claimant on the back of his head with a blackjack, and subsequently-shooting the claimant in his back with a revolver.
The altercation began on the sidewalk where the claimant was struck in the back of his head, with the resulting injuries to same. It was while Jacobson, the claimant, was in the street walking toward the curb and away from Scanlon after further argument, when Scanlon shot the claimant in his back, resulting in the injuries to his back, chest and lung. Medical testimony was offered to show that the bullet is still in claimant’s body and that he suffers permanently as a result thereof.
I find from the evidence that Scanlon attempted to effect an arrest of the claimant. In the process of performing this act he struck the claimant on his head and subsequently shot him in the back. I find further that Scanlon’s assaults upon the claimant were outrageously uncalled for and unjustified under the circumstances, and that the attempted arrest and resulting assault occurred by reason of a personal argument and was far removed from Scanlon’s place of employment.
The State argued that Scanlon instigated the altercation while off duty and that his attempted arrest was ultra vires. The claimant’s position is that despite this, under and pursuant to the Code of Criminal Procedure, Scanlon was appointed by the State of New York as a court attendant and uniformed court officer in the Supreme Court, First Department, with concomitant statutory authority as a peace officer by virtue of this employment. Therefore, argues the claimant, Scanlon as a “peace officer ” had the power, authority, and the right to use arms to effect an arrest. The claimant further claims that Scanlon was not properly and adequately trained to act as a “ peace officer ”.
To this end they produced one Arthur Niederhoffer, an expert witness on police training. He testified that a court officer should be properly trained in the law of arrest and appropriate force to be used in such arrest and should have a course of training in the technique and the legalities involved in the use of small arms. He rendered an opinion that the inadequate training given to Scanlon was a proximate cause of his misusing the weapon and his authority.
Therefore, the issues simply stated are:
(1) Whether a court attendant of the State Supreme Court being a peace officer requires special and adequate training and instructions so that he could perform his duties properly in carrying out an arrest as a “ peace officer ”, and
*116 (2) Was the State liable for the tort committed by the ‘ ‘ peace officer ’ ’, admittedly off duty, and while attempting to perform an arrest?
I have seen him and observed him. I come to the conclusion that he was totally unprepared by training and temperament to carry and use a revolver, even in the courtroom where he would be assigned as a court attendant presumably to protect the court and the public generally.
At the outset it must be determined whether Scanlon was an employee or officer of the State of New York for whose torts the State is liable within the meaning and intent of the Court of Claims Act. It has been long recognized that an employee of a civil division of the State, although exercising a governmental function, is not an employee of the State. (Paige v. State of New York, 269 N. Y. 352.) “ Obviously if the contrary were true every teacher, fireman and policeman in every municipality of the State would be an employee of the State.” (Fishbein v. State of New York, 282 App. Div. 600, 603.) Scanlon’s compensation was paid by the City of New York. His responsibilities and authority as a Supreme Court attendant were limited to a particular department. Such officers of the Supreme Court whose responsibilities are limited to a particular department have long been recognized as local officers. Scanlon in his capacity as a court attendant was no more an employee or officer of the State than an Assistant District Attorney hired and paid by a particular county would be an employee of the State. (Ritter v. State of New York, 283 App. Div. 833; Saunders v. State of New York, 14 Misc 2d 881; Fisher v. State of New York, 23 Misc 2d 935, affd. 13 A D 2d 608, affd. 10 N Y 2d 60.)
However, Scanlon had duties to perform beyond those of an attendant of the court. He was also a peace officer. (Code Grim. Pro., § 154.) Yet, as in the Fishbein case (supra, p. 603), there does not seem to be “ any cogent reasoning for classifying him other than as a local officer, within the language and intent of section 2 of the Public Officers Law, when he acts as a peace officer in making an arrest.” As Postee, P. J., notes in that case, where a probation officer effected an unlawful arrest, “ It is quite inconceivable to us that the Legislature intended to open the door to claims against the State because of blunders and mistakes on the part of local peace officers.” (Fishbein v. State, 282 App. Div. 600, 604, supra.)
It is elemental that the master is responsible for the acts of his servants within the general scope of their employment *117 while engaged in the master’s business (Mott v. Consumers’ Ice Co., 73 N. Y. 543); and under the Court of Claims Act, the State is liable for the tortious acts of State Police officers committed in such capacity. (Piatkowski v. State of New York, 43 Misc 2d 424, mod. on other grounds 24 A D 2d 544; Lippert v. State of New York, 207 Misc. 632.) But Scanlon was not an officer and employee of the State within the meaning of the Court of Claims Act.
Claimant’s counsel places the force of his argument not on the theory of respondeat superior, but rather on the liability of the State for “ the tortious act of the State by such of its servants who were responsible for the employment and training of the employee in question ’ ’. Claimant argues the State is liable under the “ dangerous instrumentality doctrine ”. This theory holds the master liable for the negligent use of a dangerous instrument entrusted by him to his servant within or without the scope of that servant’s duties to the extent that such misuse could have been reasonably foreseen by the master. (26 Yale L. J. 224.) The application of this theory to the present case falters at the threshold. The State’s nexus with a local officer is not such as to establish its responsibility for his training. In neither capacity, as a court attendant or a peace officer, was Scanlon an employee or officer of the State. He was an employee of a subdivision of the State upon which rests the responsibility for his training. If the court were to accept the theory pressed upon it by claimant’s attorney, the State would be responsible for the tortious act of employees of civil subdivisions of the State committed within or without their scope, of authority. This is a broader proposition than the one rejected by the Third Department in Fishbein v. State of New York (supra). “ To state this proposition is to refute it.” (Fishbein v. State of New York, 282 App. Div. 600, 603, supra.)
The confused and bizarre circumstances under which this incident occurred cannot be allowed to confuse the law on point. The Court of Claims Act did not expose the State to liability for the wrong committed by Scanlon or those charged with his training. Grievous as that wrong was, claimant’s remedy lies elsewhere.
The claim must be, and hereby is, dismissed.
Defendant’s motion to dismiss the claim made at the conclusion of claimant’s proof, upon which decision was reserved, is now denied. The motion renewed at the end of the trial, upon which decision was reserved, is now granted.