A.J. v State of New York (2024 NY Slip Op 04231)

A.J. v State of New York

2024 NY Slip Op 04231

Decided on August 15, 2024

Appellate Division, Third Department

Aarons, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 15, 2024

535977

[*1]A.J., Appellant,
v
State of New York, Respondent.

Calendar Date:May 29, 2024

Before: Aarons, J.P., Pritzker, Lynch, Ceresia and Mackey, JJ.

Herman Law Firm, PA, New York City (Kyle Schiedo of counsel), for appellant.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondent.

Aarons, J.P.
Appeal from an order of the Court of Claims (Catherine E. Leahy-Scott, J.), entered July 1, 2022, which granted defendant's motion to dismiss the claim.
Claimant commenced this negligence action pursuant to the Child Victims Act (see L 2019, ch 11) alleging that, in 1993, while he was between the ages of 11 and 12 years old, he was sexually abused on several occasions by an adult employee of the Northeast Parent and Child Society, Inc. (hereinafter Northeast), a nonprofit corporation providing foster care placement and residential care placement services for children (see Social Services Law § 371 [10] [a]). Claimant asserts that, after he was adjudicated a juvenile delinquent, Family Court placed him with the Division for Youth, an agency of defendant that has since been reorganized into the Office of Children and Family Services (hereinafter OCFS). According to claimant, OCFS then re-placed him at Northeast's non-secure residential detention facility in the City of Schenectady (hereinafter the Schenectady facility).
Following joinder of issue, defendant moved to dismiss the claim on the ground that the pleading lacked the requisite specificity to invoke the subject matter jurisdiction of the Court of Claims (see CPLR 3211 [a] [2]; Court of Claims Act § 11 [b]). The court rejected that ground but nevertheless granted the motion, concluding that claimant did not allege that defendant owed him a special duty of care and, therefore, the claim failed to state a cause of action for negligence in the execution of a governmental function (see CPLR 3211 [a] [7]). Claimant appeals, and we reverse.
On a motion to dismiss a claim, we afford the pleading a liberal construction and accept the facts alleged as true, according the claimant the benefit of every possible favorable inference (see Garofolo v State of New York, 80 AD3d 858, 860 [3d Dept 2011]; Trump on the Ocean, LLC v State of New York, 79 AD3d 1325, 1326 [3d Dept 2010], lv dismissed & denied 17 NY3d 770 [2011]). A cause of action for negligence requires proof that defendant owed the claimant a legally recognized duty, that "defendant breached that duty and that such breach was a proximate cause of an injury suffered by the [claimant]" (Easterbrooks v Schenectady County, 218 AD3d 969, 970 [3d Dept 2023]). That said, "an agency of government is not liable for the negligent performance of a governmental function unless there existed a special duty to the injured person, in contrast to a general duty owed to the public" (McLean v City of New York, 12 NY3d 194, 199 [2009] [internal quotation marks and citation omitted]). "A special duty can arise in three situations: (1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition" (Tara N.P. v Western Suffolk Bd. of Coop. Educ. Servs., [*2]28 NY3d 709, 714 [2017] [internal quotation marks, brackets and citation omitted]). Claimant does not dispute that he has not pleaded one of those three bases for a special duty, instead contending that he was not required to so plead because he was in OCFS's custody.
We agree. Mindful that our review requires us to determine "whether the alleged facts fit within any cognizable legal theory" (Easterbrooks v Schenectady County, 218 AD3d at 969 [internal quotation marks and citations omitted]), claimant's failure to plead a special duty is not fatal to the extent his claim alleges negligence in the performance of obligations stemming from OCFS's custody of him during his placement at the Schenectady facility (see Villar v Howard, 28 NY3d 74, 80 & n 2 [2016]; Sanchez v State of New York, 99 NY2d 247, 253 n 3 [2002]; Kemp v Waldron, 115 AD2d 869, 870 [3d Dept 1985]). When a government entity assumes custody of a person, thus diminishing that person's ability to self-protect or access those usually charged with such protection, that entity owes to that person a duty of protection against harms that are reasonably foreseeable under the circumstances (see Villar v Howard, 28 NY3d at 80; Sanchez v State of New York, 99 NY2d at 254; Flaherty v State of New York, 296 NY 342, 346-347 [1947]; Grant v Temple, 216 AD3d 1351, 1352 [3d Dept 2023]). The duty of protection is coextensive with the entity's "physical custody of and control" of the person, terminating at the point the person passes out of the "orbit of [the entity's] authority" (Pratt v Robinson, 39 NY2d 554, 560 [1976]; see Vernali v Harrison Cent. School Dist., 51 AD3d 782, 783 [2d Dept 2008]; see also Rivers v State of New York, 159 AD2d 788, 789 [3d Dept 1990], lv denied 76 NY2d 701 [1990]). Thus, we have held that "[a] governmental foster care agency is under a duty to adequately supervise the children in its charge and will be held liable for foreseeable injuries proximately related to the absence of adequate supervision," including "negligence in the selection of foster parents and in supervision of the foster home" (Grant v Temple, 216 AD3d at 1352 [internal quotation marks and citations omitted]; see Easterbrooks v Schenectady County, 218 AD3d at 971; La Fountain v County of Clinton, 237 AD2d 808, 808-809 [3d Dept 1997]; see also McCabe v Dutchess County, 72 AD3d 145, 151 [2d Dept 2010]; Barnes v County of Nassau, 108 AD2d 50, 54-55 [2d Dept 1985]; Bartels v County of Westchester, 76 AD2d 517, 521-522 [2d Dept 1980]).[FN1]
The same reasoning applies to youths adjudicated as juvenile delinquents and placed by government agencies in detention facilities. By definition, the status of juvenile delinquent attaches to a child between the ages of 7 and 12 years old when, following a fact-finding hearing, Family Court finds that the child committed an act that would constitute a crime if that act was committed by an adult (see Executive Law § 502 [4]; Family Ct Act § 301.2 [1] [a] [iii]).[FN2] Upon such a [*3]finding, placement in residential detention is among the options available to the court for disposition (see generally Family Ct Act §§ 352.2, 353.3). In this way, residential detention is sufficiently analogous to incarceration (cf. DeShaney v Winnebago County Dept. of Social Servs., 489 US 189, 201 n 9 [1989] [observing in a related context that, had the state removed the subject child "from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect"]). Of course, detention is intended to be rehabilitative rather than punitive (see Matter of Dylan C., 16 NY3d 614, 618 [2011]); however, at this early stage (see Garofolo v State of New York, 80 AD3d at 860), we infer that 11-year-old claimant's access to alternative means of protection was diminished when he was removed from his usual environment and placed at the Schenectady facility. Also true, the Schenectady facility is alleged to have been a "[n]on-secure detention facility," which is "characterized by the absence of physically restricting construction, hardware and procedures" (Family Ct Act § 301.2 [5]). Yet, the absence of bars and locks does not necessarily mean claimant was at liberty to seek out protections from harm that he could have accessed but for his custodial placement (see Sanchez v State of New York, 99 NY2d at 252; Pratt v Robinson, 39 NY2d at 560-561).
Defendant nevertheless insists that it cannot be liable based upon a custodial relationship because claimant was in the physical custody of Northeast, not OCFS, at the time of the alleged injuries. We are not persuaded. Claimant alleges that Family Court placed him into OCFS custody, and OCFS "subsequently placed [him] at" Northeast's Schenectady facility (see Family Ct Act § 353.3 [4]; compare T.T. v State of New York, 151 AD3d 1345, 1345-1346 [3d Dept 2017]). Claimant further alleges that Northeast was "under the control, ownership and/or was operated by" defendant (see Executive Law §§ 501 [3]; 503 [2]). Thus, under the standard of review applicable to a motion to dismiss (see Easterbrooks v Schenectady County, 218 AD3d at 969-970), we assume that Northeast was performing OCFS's custodial duties (see Bloom v Jewish Bd. of Guardians, 286 NY 349, 353 [1941]; cf. Paige v State of New York, 269 NY 352, 356 [1936]; Corbett v St. Vincent's Indus. School of Utica, 177 NY 16, 21-22 [1903]).[FN3] Therefore, we accept as true that claimant was in OCFS's custody for purposes of determining defendant's liability for alleged injuries that were foreseeable and proximately caused by OCFS's failure to protect him from abuse at the Schenectady facility (see Executive Law § 501 [3]; Family Ct Act § 353.3 [3], [4]; Paige v State of New York, 269 NY at 354; Grant v Temple, 216 AD3d at 1352-1353; Davila v Orange County, 215 AD3d 632, 634-635 [2d Dept 2023]; compare Hawley v State of New York, 16 NY2d 809[*4], 810 [1965]). Accordingly, "[d]efendant's argument that [claimant] was required to allege a special duty lacks merit" (Villar v Howard, 28 NY3d at 80 n 2; see Sanchez v State of New York, 99 NY2d at 253 n 3; Kemp v Waldron, 115 AD2d at 870).
Claimant's remaining contention is academic.
Ceresia and Mackey, JJ., concur.
Lynch, J. (concurring).
We respectfully concur in the majority's determination that claimant has stated a viable cause of action for negligence, premised on a breach of defendant's duty to adequately supervise the safety of a child entrusted to its care. We write separately to further explain the basis for this determination and to address the dispute between the parties as to whether a 2009 Court of Appeals decision, McLean v City of New York (12 NY3d 194 [2009]), invalidated long-standing precedent of this Court recognizing that a duty of care arises when a child is placed in the custody of the State. Pertinent in that regard, for more than 25 years, this Court has continuously recognized that "[a] governmental foster care agency is under a duty to adequately supervise the children in its charge" (Grant v Temple, 216 AD3d 1351, 1352 [3d Dept 2023] [internal quotation marks and citations omitted]; see Easterbrooks v Schenectady County, 218 AD3d 969, 970 [3d Dept 2023]; La Fountain v County of Clinton, 237 AD2d 808, 809 [3d Dept 1997]). Correspondingly, in Flaherty v State of New York (296 NY 342 [1947]) the Court of Appeals long ago recognized the State's responsibility with respect to a claimant placed in a rehabilitation institution for "delinquents not over the age of [16] years" "for risks reasonably to be perceived" (id. at 345, 346).
The majority has determined, and we fully agree, that the same principles establishing a duty in a foster care context apply to the placement of a juvenile delinquent in the custody of the State. At the time of claimant's placement, a "[j]uvenile delinquent" referred to "a person over seven and less than [16] years of age, who, having committed an act that would constitute a crime if committed by an adult" (Family Ct Act § 301.2 [former (1)]), was determined by a court to "require[ ] supervision, treatment or confinement" (Family Ct Act § 352.1 [1]). Here, the claim asserts that a Family Court order placed claimant in the custody of a state agency that has since been reorganized into the Office of Children and Family Services (hereinafter OCFS). OCFS, in turn, placed claimant in a nonsecure residential detention facility, operated by Northeast Parent and Child Society, Inc. (hereinafter Northeast), a private, not-for-profit corporation, where the alleged abuse took place. Under the principles established in the foster care cases cited above, such a placement did not fulfill defendant's custodial responsibilities under the court order, for there remained a continuing obligation to adequately supervise the placement (see also Executive Law § 503 [4]; Social Services Law § 371 [10] [a]).
With [*5]respect to the impact of McLean, the determinative factor is that claimant was judicially placed in defendant's custody, giving rise to a continuing duty to oversee his safety. While the parties agree that the State operates in a governmental capacity in the juvenile delinquency context (see Applewhite v Accuhealth, Inc., 21 NY3d 420, 425-426 [2013]; Sebastian v State of New York, 93 NY2d 790, 795 [1999]), the direct duty owed is not to the public at large, but to the child placed in the State's care. That point is what differentiates this case from McLean, where the plaintiff's child was injured in a family day care home negligently registered by the State (see McLean v City of New York, 12 NY3d at 197-199). Notably, the child in McLean was at no point in the custody of the State. Under those circumstances, the Court of Appeals applied the "long followed . . . rule that an agency of government is not liable for the negligent performance of a governmental function unless there existed a special duty to the injured person, in contrast to a general duty owed to the public" (id. at 199 [internal quotation marks and citation omitted]). From our perspective, that the Court reaffirmed the special duty rule in McLean does not establish that the Court overruled existing case law recognizing a duty of care in a custodial situation, where the State's obligation is to the individual, not the general public. The McLean court's reference to Mark G. v Sabol (93 NY2d 710 [1999]) does not, as defendant avers, compel a contrary conclusion for no claim of a common-law duty of care was raised in Sabol (see id. at 727 [Smith, J., concurring]). The Court of Claims erred in finding otherwise.
In so concluding, we are mindful that to show a breach of duty, claimant "must establish that the agency had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts by the [Northeast employee] could reasonably have been anticipated" (Grant v Temple, 216 AD3d at 1352-1353 [internal quotation marks, brackets and citations omitted]). Pertinent in this regard, at paragraph 36 of the claim, claimant asserts that "the sexual assaults and abuse of juveniles placed at [Northeast] was a chronic, unmitigated problem well known to [Northeast] officials and those of the State of New York" (emphasis added). In the answer, defendant generically "[d]enie[d] any knowledge or information sufficient to form a belief" as to this allegation and raised, as a fourteenth affirmative defense, that it "did not possess sufficient knowledge and information of the perpetrator's propensity for violence . . . prior to the alleged attack which would have notified it that extraordinary safety measures were needed to provide [claimant] with a reasonable degree of safety." The parties otherwise do not address the notice issue in their briefs. On this record, and at this juncture, construing the statements in the claim liberally, claimant has adequately [*6]alleged that defendant was on notice of the dangerous conduct in question (see Easterbrooks v Schenectady County, 218 AD3d at 970-971; compare Berg v State of New York, 228 AD3d 1077, 1079 [3d Dept 2024]).
Pritzker, J., concurs.
ORDERED that the order is reversed, on the law, with costs, and motion denied.

Footnotes

Footnote 1: The First and Fourth Departments have determined that the special duty doctrine applies to claims against government agencies by individuals alleging negligent supervision of their foster placements (see Q.G. v City of New York, 222 AD3d 443, 443-444 [1st Dept 2023]; Weisbrod-Moore v Cayuga County, 216 AD3d 1459, 1459-1461 [4th Dept 2023], lv granted 41 NY3d 908 [2024]). We decline to adopt their reasoning here.

Footnote 2: At the time of claimant's alleged placement, a juvenile delinquent was a child between the ages of 7 and 16 whom Family Court found committed an act that would constitute a crime if committed by an adult (see Family Ct Act § 301.2 [former (1)]).

Footnote 3: Even if Family Court issued an order directing OCFS to place claimant with Northeast, OCFS's status as claimant's initial placement agency necessarily subjected him to OCFS's orbit of authority throughout his placement, and thus OCFS had greater responsibilities with respect to him than performing the regulatory duties owed to youths placed by other agencies in juvenile detention facilities (see e.g. Executive Law §§ 510-a [2]; 510-b [1], [7]; compare Family Ct Act § 353.3 [2], with Family Ct Act § 353.3 [4]), or to the public generally (compare McLean v City of New York, 12 NY3d at 197-200; Sebastian v State of New York, 93 NY2d 790, 795-796 [1999]).