*792
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 The issue on this appeal is whether the State may be held liable in negligence for injuries inflicted by a juvenile delinquent who escaped from a Division for Youth (DFY) facility. To resolve the question, this Court must consider whether the State’s alleged negligence arose out of the performance of a governmental, rather than a proprietary, function. We affirm the order that upheld the ruling in favor of the State.
 

 Daniel Chadderdon was adjudicated a juvenile delinquent in July 1992. He was ordered by a Family Court Judge to be placed in the custody of the DFY, pursuant to Family Court Act §§ 352.2 and 353.2. Chadderdon was initially confined in a secure DFY facility, “which is characterized by physically restricting construction, hardware and procedures” (Executive Law § 504-a). In 1994, as the first step towards transition into the community, Chadderdon was transferred to a limited secure facility in Rochester; next, he was sent to a non-secure facility in Binghamton in July 1995. He escaped from the latter placement, and the State immediately issued a warrant for his apprehension. Approximately one month after the escape, Chadderdon robbed and assaulted a taxicab driver, claimant Sebastian. Chadderdon was arrested for this crime in August 1995. Following his conviction for attempted murder in the second degree and other serious felonies, he was sentenced as an adult criminal to 7⅓ to 22 years’ imprisonment.
 

 In February 1997, after recovering from severe injuries and reviewing the District Attorney’s file containing material on Chadderdon’s background, claimant and his wife initiated a lawsuit against the State. They asserted liability, essentially claiming that the State knew of Chadderdon’s vicious propensities. The proposed claim alleged that Sebastian’s injuries resulted from the State’s negligence in moving Chadderdon to, or supervising him at, the non-secure DFY facility, failing to prevent his escape, failing to notify appropriate authorities about the escape, and failing to take reasonable measures to recapture him.
 

 
 *793
 
 The Court of Claims rejected the claim, concluding that no “meritorious” basis was presented (Court of Claims Act § 10 [6]). The Appellate Division affirmed (250 AD2d 260). It reasoned that the claim arose out of the State’s performance of a governmental function upon which tort liability could not be fixed absent a special relationship between the injured party and the State. Claimants have conceded that they did not allege such a relationship. Their appeal, as of right to this Court, is based on a two-Justice dissent at the Appellate Division (CPLR 5601 [a]).
 

 This Court has recognized that a “governmental entity’s conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions”
 
 (Miller v State of New York,
 
 62 NY2d 506, 511-512;
 
 see, Weiner v Metropolitan Transp. Auth.,
 
 55 NY2d 175, 182). At one end of the continuum lie purely governmental functions “undertaken for the protection and safety of the public pursuant to the general police powers”
 
 (Balsam v Delma Eng’g Corp.,
 
 90 NY2d 966, 968;
 
 see also, Marilyn S. v City of New York,
 
 73 NY2d 910;
 
 Schuster v City of New York,
 
 5 NY2d 75). In this category, the State remains generally immune from negligence claims, absent a special relationship between the injured party and the State
 
 (Balsam v Delma Eng’g Corp., supra,
 
 at 967;
 
 Kircher v City of Jamestown,
 
 74 NY2d 251;
 
 Schrempf v State of New York,
 
 66 NY2d 289, 293;
 
 Miller v State of New York,
 
 62 NY2d, at 510,
 
 supra).
 

 On the opposite periphery lie proprietary functions in which governmental activities essentially substitute for or supplement “traditionally private enterprises”
 
 (Riss v City of New York,
 
 22 NY2d 579, 581;
 
 Miller v State of New York, supra,
 
 at 512-513). Activities catalogued in the proprietary ledger generally subject the State “to the same duty of care as private individuals and institutions engaging in the same activities]”
 
 (Schrempf v State of New York,
 
 66 NY2d, at 294,
 
 supra).
 

 The metaphorical continuum begins at one end with the purest proprietary matters and “extends gradually out to more complex measures of safety and security for a greater area and populace, whereupon the actions increasingly, and at a certain point only, involve governmental functions”
 
 (Miller v State of New York, supra,
 
 at 512). The varying nature of civic activities engaged in by the State may sometimes partake of both proprietary and governmental aspects.
 

 For instance, the State may act in its proprietary capacity as a landlord by virtue of its ownership of and control over a pub-
 

 
 *794
 
 lie facility and at the same time act in its governmental capacity by providing police protection to maintain law and order at that facility
 
 (see, id.,
 
 at 512-513;
 
 Bass v City of New York,
 
 38 AD2d 407, 411,
 
 affd no opn
 
 32 NY2d 894). To pinpoint a spot along the continuum where a complained-of act should be categorized to decide a case and to maintain principled consistency, courts must examine “ ‘the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred’ ”
 
 (Miller v State of New York,
 
 62 NY2d, at 513,
 
 supra,
 
 quoting
 
 Weiner v Metropolitan Transp. Auth.,
 
 55 NY2d, at 182,
 
 supra; see also, Balsam v Delma Eng’g Corp.,
 
 90 NY2d, at 967-968,
 
 supra; Marilyn S. v City of New York,
 
 134 AD2d 583, 584,
 
 affd for reasons stated by App Div
 
 73 NY2d 910,
 
 supra).
 

 In the instant case, the allegations center on the State’s supervision of the adjudicated juvenile and its efforts to recapture him after his escape. Claimants suggest that this qualifies for a proprietary classification. Their theory is that the State stands in loco parentis when it undertakes the custody of a delinquent youth and should be subject, therefore, to the same duty that a parent might be responsible for with respect to the supervision and restraint of a child with known dangerous propensities
 
 (compare, LaTorre v Genesee Mgt.,
 
 90 NY2d 576, 583;
 
 see also, Nolecheck v Gesuale,
 
 46 NY2d 332, 338-339;
 
 Wasserstein v State of New York,
 
 32 AD2d 119, 120,
 
 affd no opn
 
 27 NY2d 627; Restatement [Second] of Torts § 316; Prosser and Keeton, Torts § 123, at 915 [5th ed]). They also urge that this Court’s precedents subjecting the State to ordinary tort liability for negligently permitting the release or escape of mental patients from State-operated psychiatric hospitals
 
 (see, e.g., Schrempf v State of New York,
 
 66 NY2d 289,
 
 supra; Dunn v State of New York,
 
 29 NY2d 313) should apply with parallel cogency in this juvenile delinquent supervision and escape setting.
 

 DFY operates and maintains “secure, limited secure and non-secure facilities for the care, custody, treatment, housing, education, rehabilitation and guidance of youth placed with * * * the division” (Executive Law § 504 [1]). The placement of juvenile delinquents in such public institutions is effected by court order upon a finding that the juvenile “committed an act that would constitute a crime if committed by an adult” and that the juvenile “requires supervision, treatment or confinement” (Family Ct Act § 301.2 [1]; § 352.1 [1]). When a court orders such placement, it must consider not only the best
 
 *795
 
 interests of the youth, but also the need to protect the community as a whole (Family Ct Act §§ 301.1, 352.2).
 

 The protection of the community aspect was added to the Family Court Act (L 1976, ch 878, § 2) in response to the “increase in the quantity and seriousness of juvenile crime” (Mem of Assembly Member Gottfried in Support, Bill Jacket, L 1976, ch 878;
 
 see also,
 
 Mem of Standing Committee on Child Care in Support,
 
 id.).
 
 Thus, while the rehabilitative goal of the Family Court Act retains its pre-eminence, that objective is not exclusive. Statutorily, the protection of the community must be factored into the analysis, as it also bears relevantly on the proper classification of the State’s activities as governmental in this case.
 

 The removal of juveniles from the community by court order and their placement in public confinement — at least in part for the protection of the society as a whole — denotes a quintessentially governmental activity. Indeed, the State’s acts and omissions with respect to this juvenile delinquent’s escape manifestly implicate functions “undertaken for the protection and safety of the public”
 
 (Balsam v Delma Eng’g Corp.,
 
 90 NY2d, at 968,
 
 supra).
 
 These protective measures are aimed at society as a whole and are historically undertaken exclusively by the State as one of its unique civic responsibilities — “a tell-tale sign that the conduct is not proprietary in nature”
 
 (id.).
 

 That the State may be subject to ordinary tort liability for negligently permitting the release or escape of mental patients from State-operated psychiatric hospitals does not conflict with this particularized analysis. The State “functions in the public interest as proprietor and operator of a number of activities formerly and in some instances still carried on by private enterprise”
 
 (Bass v City of New York,
 
 38 AD2d, at 411,
 
 supra).
 
 To be sure, we have held that the State acts in its proprietary capacity when it provides psychiatric care and attendant services
 
 (see, Schrempf v State of New York,
 
 66 NY2d, at 294,
 
 supra).
 
 The application of ordinary tort liability standards in the psychiatric hospital escape cases, however, flows from the State’s alleged negligence in providing services that traditionally have been supplied by the private sector. Here, Chadderdon’s placement and escape from a DFY facility derives from State activities that are distinctly governmental and have no private sector counterpart.
 

 Claimants’ reliance on
 
 Williams v State of New York
 
 (308 NY 548) is also misplaced. The parties in
 
 Williams
 
 did not
 
 *796
 
 argue — and that case does not address — the State’s
 
 immunity
 
 from ordinary tort, liability for negligence arising out of governmental, as contrasted to proprietary, acts in a juvenile delinquency placement circumstance.
 
 Williams
 
 was procedurally resolved on appeal, after a full trial. The case turned on a foreseeability analysis applicable to ordinary negligence claims. Additionally, the bright-line distinction in
 
 Williams
 
 between punishment and restraint of adults does not take into account the distinctive nature of juvenile delinquency public confinement placements. Finally, that case also pre-dates legislative enactments in the juvenile realm, newly imposing restrictive measures traditionally reserved for the punitive and more adversarial context of adult criminal proceedings
 
 (see, Matter of Benjamin L.,
 
 92 NY2d 660, 664).
 

 The analytical framework of governmental versus proprietary continuum applies to the resolution of this case. We conclude that the case and activity are properly located at the governmental end of the spectrum, and that, therefore, the State may not be held liable in negligence for injuries inflicted by the adjudicated juvenile delinquent who escaped from the DFY facility.
 

 Policy considerations fortify our conclusion. The allowance of ordinary tort liability against the State for the injuries resulting from Chadderdon’s escape — absent a special relationship— might otherwise deter prevailing rehabilitation-release goals in juvenile delinquency adjudications
 
 (compare, Williams v State of New York,
 
 308 NY, at 557,
 
 supra; Excelsior Ins. Co. v State of New York,
 
 296 NY 40, 46). Liability, policy and fiscal fears and considerations might tilt the State’s balanced objectives in the direction of stricter and longer modalities in juvenile adjudications, instead of mainstreaming rehabilitatable youths along to less secure DFY facilities — or officials may just act more tepidly or hesitantly towards that important goal
 
 (id.).
 

 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, without costs.