[989 NYS2d 565]

WILLIAM BAUMANN et al., Plaintiffs, v LONG ISLAND POWER AUTHORITY et al., Defendants.

Supreme Court, Queens County, July 3, 2014

**APPEARANCES OF COUNSEL**

*Lazer, Aptheker, Rosella & Yedid, P.C.*, Melville, for Long Island Power Authority and another, defendants.

*Hammill, O'Brien, Croutier, Dempsey, Pender & Koehler, P.C.*, Syosset, for National Grid PLC and another, defendants.

*Sullivan Papain Block McGrath & Cannavo, P.C.*, New York City, for plaintiffs.

**OPINION OF THE COURT**

BERNICE D. SIEGAL, J.

## I. Facts

In this matter, defendants Long Island Power Authority (LIPA), Long Island Lighting Company (LILCO), and National Grid Electric Services LLC (National Grid) have moved, pursuant to CPLR 3211 (a) (7), to dismiss plaintiffs' complaint. For the following reasons, defendants' motion is denied in its entirety.

Plaintiffs, owners of real property in Breezy Point, New York, commenced this action for damages allegedly sustained as a result of fires that occurred during Hurricane Sandy (Sandy) that destroyed plaintiffs' real and personal property in Breezy Point. (Complaint at introduction.) Plaintiffs assert that the "[d]efendants were negligent, grossly negligent, careless and reckless" by failing to de-energize Breezy Point (complaint ¶ 204), though defendants de-energized Fire Island (complaint ¶ 193).

LIPA is a public authority established in 1986 pursuant to the Long Island Power Authority Act (Public Authorities Law § 1020 *et seq.*). LILCO was a private entity that provided power to

Long Island and part of Queens. In 1998, LIPA finished its acquisition of LILCO. (*Matter of Suffolk County v Long Is. Power Auth.*, 258 AD2d 226, 228 [2d Dept 1999]; *Matter of Town of Islip v Long Is. Power Auth.*, 301 AD2d 1, 4 [2d Dept 2002].) Defendant National Grid operated LIPA's electrical grid when Hurricane Sandy struck. (Complaint ¶¶ 38-43.)

## II. Discussion

Defendants LIPA and LILCO move to dismiss the complaint, alleging that they are governmental entities who were engaging in governmental functions and, based on governmental immunity, cannot be held liable absent the existence of a special duty between them and the plaintiffs. Defendant National Grid moves to dismiss on the assertion that, as a government contractor, it too has governmental immunity. Neither argument has any merit.

On a motion to dismiss, "the court must liberally construe the complaint, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Nerey v Greenpoint Mtge. Funding, Inc.*, 116 AD3d 1015, 1016 [2d Dept 2014]; *see also Paino v Kaieyes Realty, LLC*, 115 AD3d 656, 656 [2d Dept 2014].) A motion to dismiss "will fail if, taking all facts alleged as true and according them every possible inference favorable to the plaintiff, the complaint states in some recognizable form any cause of action known to our law." (*Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d 34, 38 [2d Dept 2006].) In deciding a motion to dismiss, the court will not consider whether plaintiffs' case will survive a motion for summary judgment. (*Soodoo v LC, LLC*, 116 AD3d 1033, 1033-1034 [2d Dept 2014].) " 'Whether a plaintiff can ultimately establish its allegations is not part of the calculus' " on a motion to dismiss. (*Sokol v Leader*, 74 AD3d 1180, 1181 [2d Dept 2010], quoting *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005].)

## A. Defendants Cannot Use Governmental Immunity as a Defense

Defendants LIPA and LILCO assert that "as a municipal instrumentality and subdivision of New York State" they are entitled to governmental immunity because the transmission of electricity falls under the umbrella of governmental acts. Since the Reconstruction Era, the Court of Appeals has held that

when a governmental entity acts for "private purposes," instead of "public purposes[,] . . . a municipality is like a private corporation, and is liable for a failure to use its power well, or for an injury caused by using it badly." (*Maxmilian v Mayor of City of N.Y.*, 62 NY 160, 164-165 [1875].) More recently, the Court of Appeals has held that "[a] governmental entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions." (*Miller v State of New York*, 62 NY2d 506, 511-512 [1984].) On one end of the spectrum are activities that are " 'undertaken for the protection and safety of the public pursuant to the general police powers,' " which are governmental functions. (*Sebastian v State of New York*, 93 NY2d 790, 793 [1999], quoting *Balsam v Delma Eng'g Corp.*, 90 NY2d 966, 968 [1997].) "On the opposite periphery lie proprietary functions in which governmental activities essentially substitute for or supplement 'traditionally private enterprises.' " (*Sebastian*, 93 NY2d at 793, quoting *Riss v City of New York*, 22 NY2d 579, 581 [1968]; *see also Kochanski v City of New York*, 76 AD3d 1050, 1051 [2d Dept 2010].) An act is proprietary if the governmental entity provides " 'services that traditionally have been supplied by the private sector.' " (*Applewhite v Accuhealth, Inc.*, 21 NY3d 420, 426 [2013], quoting *Sebastian*, 93 NY2d at 795.) "It is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred" that determines whether an act is governmental or proprietary. (*Weiner v Metropolitan Transp. Auth.*, 55 NY2d 175, 182 [1982].) A governmental entity engaging in a proprietary act "is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties." (*Applewhite*, 21 NY3d at 425; *see also Crosland v New York City Tr. Auth.*, 110 AD2d 148, 154 [2d Dept 1985]; *Kochanski v City of New York*, 76 AD3d 1050, 1051 [2d Dept 2010].)

The court finds that providing electricity to consumers is a proprietary act because electricity has traditionally been supplied by the private sector. Defendants offer absolutely no evidence to support the proposition that electricity in New York has traditionally been provided by public entities, and the burden on a motion to dismiss pursuant to CPLR 3211 (a) (7) never shifts to the plaintiff to disprove a defense. (*Weill v East Sunset Park Realty, LLC*, 101 AD3d 859, 860 [2d Dept 2012].) Instead, the evidence before this court shows that, traditionally, electricity in New York has been provided by private entities,

with public entities like LIPA being the exception rather than the rule. Notably, LIPA did not even operate its own electrical grid when Hurricane Sandy struck; that responsibility went to defendant National Grid, a private entity. Moreover, as even defendants admit, LILCO was an "investor owned utility [sic]" before it was acquired by LIPA, further showing that private entities, and not governmental entities, have traditionally provided electricity on Long Island. (Defendants' mem of law at 15.) Significantly, a village was held to have acted in a proprietary capacity when, while providing electricity to its residents, it negligently maintained or repaired its own power lines. (*Bliss v Village of Arcade*, 306 AD2d 902, 903 [4th Dept 2003].) Clearly, the transmission of electricity by LIPA and National Grid is a proprietary act, not governmental, depriving defendants the protection of the cloak of governmental immunity.

Defendants' reliance on *Koch v Dyson* for the assertion that providing electricity is a governmental act is misplaced. The gravamen of *Koch* was not tort liability, but rather a challenge to the authority of the Power Authority of the State of New York to authorize the building of a power plant on Staten Island. (*Koch v Dyson*, 85 AD2d 346, 347 [2d Dept 1982].) The *Koch* court did not rule on governmental immunity, let alone discuss the legal paradigm, and, accordingly, fails to buttress defendants' contentions.

Defendants' assertion that the discretionary nature of the decision not to de-energize Breezy Point provides governmental immunity also fails. As noted above, the court finds that defendants were engaging in proprietary acts. Immunity for discretionary actions only applies when the public entity was engaging in a governmental act, not a proprietary one. When a public entity "acts in a proprietary capacity, it is subject to the same principles of tort law as a private entity. By contrast, discretionary acts, such as the failure to issue a license, can never be a basis for damages." (*Applewhite v Accuhealth, Inc.*, 90 AD3d 501, 502 [1st Dept 2011] [citations omitted], *affd* 21 NY3d 420 [2013].) "[T]he common-law doctrine of governmental immunity continues to shield public entities from liability for discretionary actions taken during the performance of *governmental* functions." (*Valdez v City of New York*, 18 NY3d 69, 75-76 [2011] [emphasis added].) "[D]iscretionary *governmental* acts may not be a basis of liability." (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 453 [2011] [emphasis added].) Indeed, a governmental entity engaging in a proprietary act "is subject to

suit under the ordinary rules of negligence applicable to non-governmental parties." (*Applewhite*, 21 NY3d at 425; *see also Crosland*, 110 AD2d at 154; *Kochanski*, 76 AD3d at 1051.) Here, defendants would not have any immunity based on the discretionary nature of their actions because, as noted above, their acts were proprietary in nature, not governmental. Thus, defendants' motion to dismiss is denied.

In any event, LILCO would not be able to use governmental immunity as a defense because it is a private entity, not a governmental entity. Even the Court of Appeals has recognized that distinction in stating that LILCO is a "privately owned utility," while LIPA is a "State governmental entity." (*Long Is. Power Auth. v Shoreham-Wading Riv. Cent. School Dist.*, 88 NY2d 503, 517 [1996].) Thus, LILCO would never be able to use governmental immunity as a defense.

## B. New York Does Not Recognize a Government Contractor Defense to Negligence

■ National Grid moves to dismiss upon the premise that because LIPA is clothed with governmental immunity, as a government contractor, National Grid is likewise protected. Essentially, National Grid maintains that it can piggyback on LIPA's alleged governmental immunity. As an initial matter, this argument fails because, as discussed above, LIPA cannot use governmental immunity as a defense. But even if LIPA could, National Grid would still not be able to rely on governmental immunity as a defense because a government contractor defense to negligence does not exist in this state.

For over 100 years, the well-settled law in this state has been that private contractors that perform work for government entities are liable for their own negligence. (*Bates v Holbrook*, 171 NY 460, 468 [1902]; *Turner v Degnon-McLean Contr. Co.*, 99 App Div 135, 137 [1st Dept 1904]; *Ramme v Long Is. R.R. Co.*, 226 NY 327, 334 [1919].) As the Court of Appeals stated over 130 years ago,

> "[a] municipal corporation . . . cannot delegate power to private individuals, to be exercised for their own private benefit, to do injury to the property of their neighbors, and relieve them from responsibility for the damages they may occasion, or reduce their liability to such as may result from want of [proper] care." (*Mairs v Manhattan Real Estate Assn.*, 89 NY 498, 506 [1882].)

Private entities that perform work for public entities may not

use governmental immunity as a defense to a negligence claim. This court finds no reason to countermand the weight of authority. Thus, defendant National Grid's motion to dismiss is denied.

## III. Conclusion

Defendants' motion to dismiss is denied in its entirety.