Shultz v State of New York (2020 NY Slip Op 06177)





Shultz v State of New York


2020 NY Slip Op 06177


Decided on October 29, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 29, 2020

527219

[*1]Jennifer Shultz Calverley, as Personal Representative of the Estate of Dale Scott Calverley, Deceased, Respondent,
v
State of New York, Appellant.

Calendar Date: September 11, 2020

Before: Lynch, J.P., Clark, Devine, Pritzker and Reynolds Fitzgerald, JJ.


Letitia James, Attorney General, New York City (Brian D. Ginsberg of counsel), for appellant.
McLaughlin & Stern, LLP, New York City (Nelson E. Canter of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from an order of the Court of Claims (McCarthy, J.), entered May 30, 2018, which granted claimant's application pursuant to Court of Claims Act § 10 (6) for permission to file a late claim.
In August 2015, Dale Scott Calverley (hereinafter decedent) drowned while swimming at the base of Buttermilk Falls, a popular destination along the Raquette River in the Adirondack Park, located in the Town of Long Lake, Hamilton County. Decedent and claimant, his wife, were on a camping trip in the Adirondack region with their three children. They arrived at a pull-off on North Point Road and observed signage denoting the area as Buttermilk Falls. After parking in the pull-off, which can accommodate 10 to 15 vehicles, the family followed a short path to the waterfall basin where numerous people were swimming. Decedent and his children entered the water, which claimant described as "smooth and calm" with no visible current. After swimming for approximately 20 minutes, decedent swam towards the base of the waterfall. Shortly thereafter, decedent — an experienced swimmer and former ocean lifeguard — appeared "stuck in one place." Onlookers observed decedent go under the water, resurfacing face down and motionless. Several persons removed decedent from the water and unsuccessfully administered CPR. Following an on-scene investigation by the State Police, decedent's death was recorded as an accidental drowning due to the failure to escape an underwater current.
Claimant was appointed the personal representative of decedent's estate on August 2, 2016. In July 2017 — after the 90-day deadline to file a claim against defendant had expired (see Court of Claims Act § 10 [2]) — claimant sought permission to file a late claim pursuant to Court of Claims Act § 10 (6).[FN1] The proposed claim alleged that decedent drowned due to the negligence, carelessness and recklessness of the Adirondack Park Agency and the Department of Environmental Conservation in their management of Buttermilk Falls by failing to warn visitors of a dangerous condition, i.e., an alleged latent underwater current at the base of the waterfall. Defendant opposed the motion. Upon analyzing the factors set forth in Court of Claims Act § 10 (6), the Court of Claims granted claimant's motion, finding, among other things, that there was no prejudice to defendant and that the claim had the appearance of merit. Defendant appeals.
Defendant argues that the Court of Claims abused its discretion in granting claimant's motion because the proposed claim lacks the appearance of merit.[FN2] We disagree. "The decision whether to grant or deny an application to file a late claim lies within the broad discretion of the Court of Claims and should not be disturbed absent a clear abuse of that discretion" (Langner v State of New York, 65 AD3d 780, 782-783 [2009] [internal quotation marks and citations omitted]; see Court of Claims Act § 10 [6]; Matter of Barnes v State of New York, 158 AD3d 961, 962 [2018]). When entertaining such an application, the court must consider, among other factors, "whether the claim appears to be meritorious" (Court of Claims Act § 10 [6] [emphasis added]; see Matter of Barnes v State of New York, 158 AD3d at 962 n). Although no single factor is controlling (see Bay Terrace Coop. Section IV v New York State Employees' Retirement Sys. Policemen's & Firemen's Retirement Sys., 55 NY2d 979, 981 [1982]), "it would be futile to permit the filing of a legally deficient claim which would be subject to immediate dismissal, even if the other factors tend to favor the granting of the request" (Prusack v State of New York, 117 AD2d 729, 730 [1986]; see Shah v State of New York, 178 AD3d 871, 872 [2019], lv dismissed 35 NY3d 982 [2020]). A claim has the appearance of merit so long as it is "not . . . patently groundless, frivolous or legally defective, and the record as a whole . . . give[s] reasonable cause to believe that a valid cause of action exists" (Sands v State of New York, 49 AD3d 444, 444 [2008]; see Matter of Martinez v State of New York, 62 AD3d 1225, 1227 [2009]; Goldberg v State of New York, 122 AD2d 248, 249 [1986]).
Upon our review of the record, we cannot say that the claim raised is patently groundless, frivolous or legally defective. Contrary to defendant's contentions, claimant has presented a potential claim that defendant knew or should have known of the dangerous underwater current at the waterfall basin at Buttermilk Falls and should have taken affirmative steps to warn visitors of that condition. Although defendant asserts that the Department of Environmental Conservation's management of Buttermilk Falls is a governmental function entitled to the protection of governmental immunity, the record does not, at this early stage, foreclose the possibility that defendant's alleged failures implicate a proprietary function, rather than a governmental one, so as to defeat the governmental immunity defense (see generally Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]; Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 447-448 [2011], cert denied 568 US 817 [2012]). In our view, claimant's submissions were sufficient, at this stage in the proceedings, to demonstrate an appearance of merit to her claim (see Court of Claims Act § 10 [6]; Tucholski v State of New York, 122 AD3d 612, 612-613 [2014]). Accordingly, the Court of Claims did not abuse its discretion in granting claimant's motion to file a late notice of claim (see Perez v State of New York, 75 AD2d 683, 684 [1980]).
Clark, Devine and Pritzker, JJ., concur.
Lynch, J.P. (concurring).
I agree with the majority that the Court of Claims' order should be affirmed and that claimant has presented a potential claim that defendant knew or should have known of the dangerous underwater current at the base of the waterfall. I write separately to express my view that the issue of governmental immunity can and should be decided on the merits in resolving this appeal. Defendant expressly raised the issue of governmental immunity in response to claimant's motion to file a late claim under Court of Claims Act § 10 (6) and seeks a dismissal of the claim. Specifically, defendant maintains that the proposed claim lacks even the appearance of merit as required under Court of Claims Act § 10 (6) because the management of Buttermilk Falls by the Department of Environmental Conservation (hereinafter DEC) is a governmental function. In a similar procedural scenario, the Court of Appeals determined, in Sebastian v State of New York (93 NY2d 790, 792-793 [1999]), that a motion brought under Court of Claims Act § 10 (6) to file a late claim was properly denied because defendant was immune from liability — i.e., the governmental immunity issue was decided on the merits (see also Matter of Karras v State of New York, 48 AD2d 748, 748 [1975], lv denied 37 NY2d 708 [1975]). We should do the same here, not just for purposes of judicial economy, but primarily because the question of law presented can be addressed on this record (see Sebastian v State of New York, 93 NY2d at 792-793; Mon v City of New York, 78 NY2d 309, 313 [1991]).[FN3] Defendant has already submitted the evidence upon which it relies in support of its contention that its failure to post warning signs at the base of Buttermilk Falls stems from a governmental function taken in the exercise of its discretion, i.e., the self sufficiency directive set forth in the Adirondack Park State Land Master Plan (hereinafter the Master Plan), which is contained in the record before the Court of Claims.
Turning to the immunity question, I am of the view that the proposed claim stems from defendant's performance of a proprietary function and, therefore, defendant is not shielded from liability under the doctrine of governmental immunity. "Where, as here, a negligence claim is asserted against a governmental agency, the threshold issue to be determined by the court is whether the governmental agency was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Scozzafava v State of New York, 174 AD3d 1109, 1110 [2019] [internal quotation marks, brackets and citations omitted]; see Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]; Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 446-447 [2011], cert denied 568 US 817 [2012]). "If [the governmental agency] was engaged in a proprietary function — that is, [an] activit[y] that essentially substitute[s] for or supplement[s] traditionally private enterprises — it is subject to suit under ordinary negligence principles applicable to nongovernmental actors" (T.T. v State of New York, 151 AD3d 1345, 1346 [2017] [internal quotation marks and citations omitted]; see Miller v State of New York, 62 NY2d 506, 511-512 [1984]). If, however, "the claim ar[ose] out of [the] performance of acts undertaken for the protection and safety of the public pursuant to the general police powers, which is a quintessential governmental function, the governmental actors
. . . are immune from a negligence claim" unless a special duty was owed (Scozzafava v State of New York, 174 AD3d at 1110 [internal quotation marks and citations omitted]; see Turturro v City of New York, 28 NY3d 469, 479 [2016]). Claimant asserts no special duty here.
As the Court of Appeals has recognized, "the functions of a governmental entity can be viewed along a 'continuum of responsibility' ranging from the most basic proprietary obligation, like that of a private landlord, to the most complex governmental function, such as the provision of police protection" (Matter of World Trade Ctr. Bombing Litig., 17 NY3d at 446, quoting Miller v State of New York, 62 NY2d at 511-512). "Consequently, any issue relating to the safety or security of an individual claimant must be carefully scrutinized to determine the point along the continuum that the [governmental entity's] alleged negligent act falls into, either a proprietary or governmental category" (Miller v State of New York, 62 NY2d at 512). The relevant inquiry requires an "examin[ation of] the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred" (Matter of World Trade Ctr. Bombing Litig., 17 NY3d at 447 [internal quotation marks and citations omitted]). Specifically, the determinative question here is whether defendant's failure to warn visitors of an alleged dangerous underwater current at Buttermilk Falls implicates a proprietary or governmental function. When applying these principles, we must be mindful of the unique nature of the Adirondack Park and defendant's role in maintaining the park (see Matter of Adirondack Wild Friends of the Forest Preserve v New York State Adirondack Park Agency, 34 NY3d 184, 187 [2019]).
The Court of Appeals has held that a municipality's operation of a public park is a "quasi-private or corporate and not a governmental function" (Caldwell v Village of Is. Park, 304 NY 268, 273 [1952]). The Fourth Department has since applied that rule to injuries resulting from defendant's negligent failure to take adequate steps to protect park patrons from reasonably foreseeable dangers in a park owned by defendant (see Agness v State of New York, 159 AD3d 1395, 1396 [2018]). Defendant correctly notes that its obligations with respect to the Adirondack Park derive from statutory and constitutional origins for the benefit of the general public, rather than its voluntary assumption of the role of landlord. Nevertheless, that status does not accord wholesale immunity for any and all acts that defendant undertakes within the wild forest preserve as a result (see Drake v State of New York, 75 AD2d 1016 [1980], affg for reasons stated below 97 Misc 2d 1015 [Ct Cl 1979], lv denied 51 NY2d 702 [1980]). In my view, defendant performs dual proprietary and governmental functions in the discharge of its obligation to protect, preserve and manage the public lands within the Adirondack Park.[FN4] Unlike acts undertaken for the protection and safety of the public pursuant to the general police powers — for which governmental immunity attaches — defendant's failure to place warning signs at the base of Buttermilk Falls does not stem from the type of policy-based decision-making that the governmental immunity doctrine aims to protect (see Matter of World Trade Ctr. Bombing Litig., 17 NY3d at 447). "[V]iewed along [the] continuum of responsibility," it is my view that this claim falls within the parameters of defendant's proprietary functions (id. at 446 [internal quotation marks and citation omitted]; see generally Wittorf v City of New York, 23 NY3d 473, 480 [2014]).
Defendant contends that DEC was under no obligation to post a warning sign based on the Master Plan's "self-sufficiency" directive that visitors are responsible for their own safety. Such a directive is a reasoned acknowledgement of a visitor's duty to act responsibly in the vast natural terrain of the Adirondack Park, but it is not an affirmative instruction that DEC refrain from posting signs or disregard known latent hazards. "Even accepting for purposes of this case that the Master Plan is a 'law' or 'constitutional provision'" (Matter of Adirondack Wild Friends of the Forest Preserve v New York State Adirondack Park Agency, 34 NY3d at 193-194), it expressly permits the posting of signs in wild forest areas of the Adirondack Park. Although DEC's regional supervisor for natural resources in the Buttermilk Falls region averred that DEC "has adopted a long-standing policy of not placing warning signs in the Forest Preserve," the record reveals that DEC placed just such a sign at the top of the waterfall to warn approaching canoeists and others of the danger ahead and direct travelers to a safe portage around the falls. That undeniable fact confirms that a warning sign could also have been placed at the base of the waterfall.
As a final note, although I believe that claimant's specific claim may go forward, it must be emphasized that defendant's "duty to take reasonable precautions to prevent accidents which might foreseeably occur as a result of dangerous terrain . . . does not extend to open and obvious conditions that are natural geographic phenomena which can readily be observed by those employing the reasonable use of their senses" (Cohen v State of New York, 50 AD3d 1234, 1235 [2008] [internal quotation marks and citations omitted], lv denied 10 NY3d 713 [2008]). As the proposed claim has the appearance of merit, I agree that the Court of Claims properly granted claimant's motion (see Court of Claims Act § 10 [6]).
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Claimant maintains that she previously filed a claim against defendant in or around October 2016 — within the 90-day statutory deadline — but the Attorney General's office denied receipt of service. Consequently, that claim was dismissed.

Footnote 2: By limiting its challenge only to the propriety of the Court of Claims' determination on the fourth factor enumerated in Court of Claims Act § 10 (6), defendant has abandoned any argument with respect to the remaining factors.

Footnote 3: The jurisdictional predicate for the appeal in Sebastian v State of New York (93 NY2d at 793) was CPLR 5601 (a), which permits an appeal as of right to the Court of Appeals only if the two-Justice dissent at the Appellate Division is on a question of law.

Footnote 4: From a general perspective, the Adirondack Park's vast and varied public land classification system demonstrates the importance of carefully scrutinizing defendant's allegedly negligent conduct in any given instance to discern the proper capacity in which such conduct should be assessed (see Sebastian v State of New York, 93 NY2d at 793-794; Miller v State of New York, 62 NY2d at 511). Specifically, under the given circumstances, defendant's dual role may be discerned from DEC's exercise of its duty to care for and control the Adirondack Park (see ECL 9-0105 [1]) in a proprietary capacity as a landowner, and also in a governmental capacity by providing law enforcement through the assignment of forest rangers to patrol the area where Buttermilk Falls is located.